Chief Justice Robertson
delivered (he Opinion of the Court.
Clayton Talbot sued William G. Bakewell, in case for an alleged tort—in negligently permitting Washington, a small boy, the slave of the plaintiff, in the defendant’s possession, to be lost or drowned. The declaration contains four counts: but, as it is evident, from the proof, that the boy had been neither hired nor loaned to Bake-well, neither the first count, which alleges a hire, nor the second, which avers a loan, authorized the verdict for damages on which the Circuit Court rendered the judgment, which this appeal seeks to reverse. Nor could the verdict be sustained on the third count—which alleges, that the appellant seduced the boy from the appellee’s service, and induced him to go into the Ohio river, inconsequence of which he was drowned; for those allegations are not only not sustained by any evidence but are clearly negatived by all the proof.
The fourth count charges, that the boy having left the appellee’s service and gone to the appellant’s house, he (the appellant) “permitted” him to go with him to the river, and there “negligently left him in charge of his property, and then and there carelessly left him so long “ that, in attempting to return home, he was drowned.”
The proof. ” The owner of ft little colored boy-allowed him te go and stay most of the time 'with his mother — a slave who had been hired by a neighbor — who became fond of the boy. As ft necessary consequence, Some care and control —not the full authority of a master,'over the hoy, dovolved upon the neighbor, & he committed no trespass by permitting the R6y to go a hunting with him: and the boy being drowned or lost upon the excursion, he was accountable, only upon the supposition, that-^-de~ riving no benefit from having the boy, and his care of him being beneficial ta the master only, he was guilty of gross negligence in reí a'iion to him; or, that his thus having the boy in charge was a ben efit to himself, as well as the master, and the loss occurred for want of such care a man of .common prudence would take of his ownservant; and "as to which party, or whether both, were benefittedby thetrans ferof possession of the hoy, depends upon facts to bo found by a jury.—;For—
The proof on the trial was—that the parties lived in ‘the same town; that the appellant had the mother of Washington on hire from the appellee; that Washington, being only about nine years old, frequently stayed with bis mother and made the appellant’s house his principal home; that there was a mutual attachment between him and the appellant; that he had been, on more occasions than one, 'confined by sickness at the appellant’s house, and once with the cholera, and that the appellant nursed him and had him attended by his own family physician— and that, whilst he was thus at his house, the appellant, •on one occasion, took him with him, in his gig, to an island in the river not far from his residence, and, having fastened the horse and gig on the island, wrapped him in his cloak and left him in the gig, whilst he himself was shooting ducks in full view; that when he returned to the gig, though Washington’s hat, and the cloak, and the horse and gig remained—Washington himself was not there, and never afterwards was seen or heard of.
These facts do not prove, or, in any degree, conduce to show, that the boy had left the service of his master and gone, without his consent, to the appellant’s house; ■on the contrary, they clearly prove that ho was there with his master’s consent, and that his being there was 'a favor to"the master rather than to the appellant; and there was, of course, an implied authority to exercise •some control over him, though not to the full extent of the dominion of a master over his own slave; and Consequently, the appellant was not guilty of a tresspass in permitting Washington to go with him on an evening’s hunting excursion; nor is he liable for his mysterious fate, unless it occurred in consequence of a non-observ'ance by him of that care which a reasonable man would have taken of his own slave. He had not a right to employ and use him, as Ids own, unless he had been in the habit of doing so with the appellee’s concurrence; but if he was using him as he had a right to do, he was not bound to take more than ordinary care of him. Had he taken him from his master tortiously, or kept him without his master’s consent, he would have been responsible for whatever loss might have occurred, wheth- *218 or with his fault or without it. But a bailee, express' of implied, is accountable for only ordinary care when tho bailment is not exclusively beneficial to himself; and if it be advantageous to' the bailor only, gross negligence, bordering on fraud or tresspass, must be shown before the burthened bailee should be liable.
A bailment—express or implied, not exclusively beneficial to- .the bailee, requires but ordinary care to'save him from accountability ;& if the bailment is advantageous . to the bailor on, ly, gross negligence oil the part of the' bailee, must be shown, to make him liable. But—
If the property was obtained, or is held against the owner’s will, tortiously, the bailee is liable f<ír ány Idss or injury to it—tho’ it occurs without Faalfcon his part, Sound * instructions-should riot be' refused becarisá they relate only to part of the facts, as such refusal would tend to mislead the jury as to the' whole case; and otherinstmetions as to other facts, which may alter the result, may be given also.
If then the jury had believed, as the testimony tended to prove, that the boy was staying at the appellant’s house with the consent of the appellee,the utmost care required of the appellant by the law,- was that which is denominated ordinary—or, in other words, that which a reasonably careful man would have taken of his- own slave of the same age and under the like circumstances.
And therefore, the Court below erred in refusing to instruct the jury that, if they should believe that Washington was staying at the appellant’s house’ with- the permission of his master, not for the appellant’s benefit, but for the welfare or gratification of the boy, the appellant was not bound to take more than ordinary care of him. For, although the proposed instruction left untouched the question whether the appellant had a right to take or permit the boy to go with him—yet it was true as far as it went, and the Court, by overruling it, left the jury to infer that it was the opinion of the Court that, on the hypothetical facts stated, the appellant was bound to take more than ordinary care of the boy.
And, in this respect, the jury might have been, and probably were, misled as to the law, so far as the rejected instruction applied, and therefore, unless the Court could, as a matter of law, decide that the appellant had no right to take the boy with him, or that there was gross negligence in leaving him on the island, as he was left, there was error in overruling the instruction.-
And certainly, if the facts assumed in the proposed instruction, were true, the law should not decide, that the appellant had no right to take the boy with him and leave him as he did: because that right depended on the purpose for which he was taken, and on the danger incurred; and these are deductions more of fact than of law. And, as the count only charges that the appellant “permitted,” the hoy to go with him and then negligently *219 and improperly left him in charge of his horse and gig on the island—the only question for the consideration of the jury, was whether there was, according to the facts, culpable negligence in thus acting. And whether there was, or not, depended chiefly on the degree of danger to have been reasonably apprehended.
Wherefore, for error in refusing the instruction proposed by the appellant it is considered by this Court, that the judgment of the Circuit Court be reversed, and the cause remanded for a new trial.